**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EZEKIEL SCHULTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UTZ BRANDS, INC.,<br><br>Defendant. | Civil Action No.: 1:26-cv-4969<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ezekiel Schultz ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Utz Brands, Inc. ("Utz" or "Defendant"), based on Utz's false and deceptive advertising and labeling of its Boulder Canyon Avocado Oil Class Sea Salt Kettle Style Potato Chips (the "Product"). Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. During the statute of limitations period, Defendant Utz Brands, Inc. ("Utz" or "Defendant") has marketed, labeled, advertised, and sold its Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips to consumers with packaging that prominently represents that the Product is made with avocado oil (the "Avocado Oil Representation").

2. The words "Avocado Oil" appear on the front of every package of the Product, as part of the product's own name. The Avocado Oil Representation is reinforced by the ingredient statement on the back label, which declares just three ingredients—"Potatoes, Avocado Oil, Sea Salt"—and which declares no oil other than avocado oil.

3. Reasonable consumers believe, based on the Avocado Oil Representation, that the oil used to make the Product is avocado oil, and that the Product is not made with other, cheaper oils. However, unbeknownst to consumers, Defendant's representations are false and misleading because Defendant has engaged in economic adulteration of the Product.

4. Specifically, a peer-reviewed scientific testing conducted by food scientists at the University of California, Davis ("UC Davis")—published in July 2026 in the journal *Applied Food Research*—extracted the oil from commercially processed foods labeled as exclusively containing avocado oil, including the Product.[1] These researchers analyzed the product samples, including the Product, to assess their fatty acid and sterol composition against the internationally recognized compositional standards for authentic avocado oil codified in the *Codex Alimentarius*.[2]

5. The UC Davis researchers collected and analyzed two separate production lots of the Product. **Neither lot sample of the Product was found to be compositionally consistent with authentic avocado oil.** Instead, the oil recovered from the Class Product bore the compositional signature of cheap, refined vegetable (seed) oils—the very oils that consumers pay a premium to avoid.

6. Had Plaintiff and Class Members known the truth—that the Product has either substituted or diluted the avocado oil it claims to exclusively contain, they would not have purchased the Product, or would have paid substantially less for it.

7. Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Product during the statute

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[2] *Id.* at 3.

of limitations period, for violations of New York's General Business Law ("GBL") §§ 349 and 350; intentional misrepresentation, breach of express warranty; breach of implied warranty; and unjust enrichment.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because there are more than 100 Class Members, the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

9. This Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of this District by selling the Product to consumers in New York, including selling the Product to Plaintiff while in New York. In addition, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the acts and events giving rise to the claims occurred in this District and Plaintiff resides in this District.

## PARTIES

***Plaintiff***

11. Plaintiff Ezekiel Schultz is a citizen and resident of the United States and the State of New York. He currently resides in Brooklyn, New York.

12. Plaintiff Schultz has purchased Defendant's Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips on various occasions, including in September 2025 from Costco Wholesale in New York for approximately $17.99, and as recently as a few months prior

to August 2026. Plaintiff has frequently purchased the Product from the store SuperFresh located in Brooklyn New York.

13. Plaintiff Schultz purchased the Product specifically because it was advertised as being made with avocado oil. He saw and read the words "Avocado Oil" on the front of the package before buying it, and he reviewed the ingredient statement, which listed avocado oil as the only oil in the product. Plaintiff Schultz reasonably believed, based on the Avocado Oil Representation, that the oil used to make the Product was avocado oil, and did not believe that the Product contained any other oils.

14. Plaintiff Schultz relied on the Avocado Oil Representation, meaning he took it into consideration when making his decision to purchase the Product and he would not have purchased the Product, or would have paid less for the Product, had he known the Product was either substituted or diluted with other oils. Thus, Plaintiff Schultz has suffered injury in fact and lost money as a result of Utz's misleading, false, unfair, and deceptive practices, as alleged herein.

15. Plaintiff Schultz will be unable to rely on the Product's Avocado Oil Representation in the future, as he will be unable to determine the true composition of the oil in the Product absent scientific testing, and so will be unable to purchase the Product in the future, although he would like to. Plaintiff Schultz remains interested in purchasing snack products that are made with avocado oil, intends to purchase them in the future, and would consider purchasing the Product in the future if Utz ensured that the Avocado Oil Representation was accurate and truthful.

***Defendant***

16. Defendant Utz Brands, Inc. is a Delaware corporation with its headquarters and principal place of business in Hanover, Pennsylvania.

17. Utz manufactures, markets, and distributes a portfolio of salty snack brands, including the Product, throughout the United States, including in New York.

## FACTUAL ALLEGATIONS

### A. Defendant's Boulder Canyon Products

18. Utz promotes Boulder Canyon as America's fastest-growing salty snack brand and as the number one salty snack brand in the natural channel.[3]

19. Defendant markets its Boulder Canyon brand as providing consumers with snacks made with "premium oils" and real, simple ingredients, rather than the refined seed oils used in conventional snack foods. *See* Figures 1 and 2.




**Figure 1**

[3] BusinessWire, *Utz Brands Showcases New Chips, Pretzels and Bestsellers at Natural Products Expo West*, Feb 27, 2026, https://www.businesswire.com/news/home/20260227548219/en/Utz-Brands-Showcases-New-Chips-Pretzels-and-Bestsellers-at-Natural-Products-Expo-West.

**Crafted Simply.**
**Enjoyed Boldly.**

At Boulder Canyon, we've always believed that real food doesn't need a long ingredient list. Every chip we make is rooted in simplicity—just potatoes, premium oils, and the perfect seasoning. Our approach to snacking is the same as our approach to life: slow down, stay grounded, and savor what matters.

Whether you're hiking a trail or sharing a meal at home, we're proud to bring you snacks that celebrate flavor, integrity, and the beauty of doing things the right way.

**Figure 2**

20. In other words, Defendant puts its Boulder Canyon brand out to be a healthier, premium snack product and consumers, such as Plaintiff and Class Members expect this level of quality.

///

///

///

///

///

///

///

///

///

///

**B. The Avocado Oil Representation Is False and Misleading**

21. As a brand touting its premium oil use, Defendant prominently displays the Avocado Oil Representation on the front label of the Product, in the same manner, on every package, as depicted in the following representative image:




**Figure 3**

22. The Avocado Oil Representation is not a peripheral or fine-print claim. The words "Avocado Oil" are part of the Product's name, and they appear on the front of the package, in large type, above the flavor designation. *See* Figure 3. Utz uses those words to distinguish the Product from the Boulder Canyon chips containing other oils, including cheaper oils like sunflower oil, in particular because those other products do not list the oil used prominently on the front of the

packaging. *See, e.g.*, Figure 4 (product containing sunflower oil and safflower oil, but omitting mention of the oil on the front of the package).




**Figure 4**

23. Additionally, the Avocado Oil Representation is reinforced—not qualified—by the back label of the Product. The ingredient statement reads, in its entirety: "Potatoes, Avocado Oil, Sea Salt." Figures 5 and 6.

///

///

///

///

///

///

///

///

///

///


LIVE BETTER.
EAT BOULDER.
OUR JOURNEY STARTED IN BOULDER, COLORADO IN 1994 WITH THE SIMPLE BELIEF THAT BETTER TASTES COME FROM BETTER INGREDIENTS. SO WE USE ONLY THE BEST INGREDIENTS TO CRAFT OUR KETTLE STYLE POTATO CHIPS IN SMALL BATCHES. THE RESULT IS A PERFECTLY SEASONED CHIP THAT IS CRISPY, CRUNCHY AND BOLD - MUCH LIKE THE OUTDOORS THAT INSPIRES US ALL.
WHY AVOCADO OIL? IT BRINGS A SMOOTH
buttery taste
AND
BIG CRUNCH
TO OUR KETTLE STYLE CHIPS SO YOU CAN LIVE BETTER BY EATING BOULDER.
Nutrition Facts
Calories 160
Distributed by Inventure Foods, Inc.
3500 S La Cometa
Goodyear, Arizona 85338
Questions or Comments:
1-866-890-1004
@BOULDERCANYON


INGREDIENTS: POTATOES, AVOCADO OIL, SEA SALT.

**Figure 5**

///

///

///

///

///

///

///

///

///




**Figure 6**

24. The Product declares exactly one oil—"Avocado Oil." It declares no other oil, no oil blend, and no "and/or" oil statement. That omission is meaningful, because Defendant uses an "and/or" oil statement—"Sunflower Oil and/or Safflower Oil"—on the Boulder Canyon chips that are made with seed oils. *See* Figure 4. A reasonable consumer who reads "Avocado Oil" on the front of the package, and then finds "Avocado Oil"—and only "Avocado Oil"—on a three-ingredient statement, reasonably understands that the oil in the Product is avocado oil.

25. Defendant's Avocado Oil Representation is however false and misleading because, as found by the UC Davis researchers, the Product is not compositionally consistent with authentic avocado oil, and instead exhibits the compositional profile of cheaper refined vegetable oils.[4] This

---

[4] UC Davis, *Studied Products AFRES*, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

means the Product has either substituted the avocado oil for other cheaper oils, or has diluted the avocado oil with cheaper oils.[5]

26. At bottom, Defendant has engaged in economic adulteration and has mislead consumers into believing they are purchasing a Product made only with high quality, avocado oil. Thus, Defendant's Avocado Oil Representation is actionable.

**C. The Avocado Oil Representation is Material To Consumers**

27. The Avocado Oil Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Product.

28. Avocado oil is well known to be one of the healthiest food oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure and LDL cholesterol, and reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[6] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat, while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[7] Avocado oil is also in high demand because it has the highest smoke point of all plant-based food oils, and is thus more desirable for high-heat applications such as frying.[8]

29. Each of these qualities, among others, motivates consumers to pay a premium price for products made with avocado oil as compared to products made with other food oils like canola, corn, peanut, safflower, soybean, and sunflower oil.

30. Defendant does not disclose anywhere on the Product's packaging, or anywhere else, that the oil in the Product is not avocado oil, or that the oil in the Product is blended,

---

[5] Lopez-Alvarez, *et al.*, *supra* note 1.

[6] Healthline, *Evidence-Based Health Benefits of Avocado* Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits.

[7] MasterClass, *What Is Avocado Oil? A Guide to Cooking With Avocado Oil*, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil.

[8] *Id.*

diluted, or substituted with cheaper vegetable or seed oils. Thus, consumers reasonably believe that the oil used to make the Product is avocado oil.

31. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Product reasonably expect to know what type of oil they are consuming.

32. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product."[9]

33. Consumers purchased, and continue to purchase, the Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with avocado oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased it at all, if not for the Avocado Oil Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Product commands in the market as a result of Utz's representation that the Product is made with avocado oil.

[9] Lopez-Alvarez, *et al.*, *supra* note 1 at 2, 4.

### D. UC Davis's Study Establishes That Defendant Has Either Diluted or Substituted The Avocado Oil In The Product – Thus Engaging In Economic Adulteration

34. The study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, conducted by researchers at UC Davis, reported the results of the first systematic study of whether avocado oil and olive oil used as ingredients in commercially processed foods are authentic.[10]

35. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability."[11] Critically, the researchers included only products that "declared a single oil (e.g. avocado oil or olive oil) in the ingredient statement and did not list additional edible oils."[12] The Product satisfied that criterion and was included in the Study.

36. The UC Davis researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. The Product was among the products tested.[13] In the product information accompanying the Study, Boulder Canyon's "Avocado Oil Classic Sea Salt Kettle Style Potato Chips" is identified as Sample Nos. 1 and 2.

37. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis.[14] Two separate lots of each

[10] *Id.*

[11] *Id.* at 2.

[12] *Id.*

[13] *Supra* note 4.

[14] Lopez-Alvarez, *et al.*, *supra* note 1 at 2.

product were collected and analyzed.[15] The Product was therefore subjected to analyses drawn from two independent production lots.[16]

38. Researchers measured both the Product's fatty acid profile and sterol profile.[17] They classified samples by comparing the measured fatty acid and sterol profiles against the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[18]

39. The Study's classification criteria were deliberately conservative and generous to the products tested.[19] To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations: a deviation limited to a single fatty acid or sterol marker, and "not exceeding 10% beyond established compositional limits," was **not** treated as sufficient to classify a sample as inconsistent, and such samples "were therefore considered consistent."[20] A sample was treated as merely "borderline"—and not inconsistent—where no more than two markers marginally exceeded that same 10% allowance without concordant deviations elsewhere. And when a sample was fully consistent in either fatty acids or sterols and borderline in the other, "it was considered consistent with authentic oil."[21] Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[22]

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See id.* at 3.

[20] *Id.*

[21] *Id.*

[22] *Id.*

40. **The Product failed both lots tested.** Researchers classified both lot samples as inconsistent with the composition of avocado oil.

41. The Product was not an outlier. Of the 28 avocado oil–labeled chip samples the UC Davis researchers tested, 26—**93%**—were classified as inconsistent with authentic avocado oil. Across all avocado oil–labeled products in the Study, "[e]ighty-nine percent of avocado oil–labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[23]

42. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims."[24] "Many avocado oil–labeled samples clustered near" a vegetable-oil comparator sample "containing canola, corn, soybean, and/or sunflower oil, suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[25]

43. In short, the oil in the Product is not avocado oil, or at a minimum, not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace—including the sunflower and safflower oils that Utz itself uses, and discloses, in Boulder Canyon's conventional chips

## E. The Frying Process Does Not Explain The Compositional Inconsistency

44. The UC Davis researchers anticipated and tested the obvious defense—that the compositional deviations they observed might be an artifact of cooking rather than evidence of what oil went into the product—and refuted it experimentally.[26]

---

[23] *Id.* at 1, 3.

[24] *Id.* at 4.

[25] *Id.* at 6.

[26] *See id.* at 7.

45. The researchers prepared model products in the laboratory using retail avocado oils that they employed as reference oils, and whose pre-frying fatty acid and sterol profiles fell within every applicable Codex range.

46. The results were unambiguous. "For avocado oil subjected to frying [ ], absolute changes in major fatty acids were less than 0.6%." Cis-vaccenic acid—the key discriminatory marker for avocado oil authenticity—"decreased by only 0.1% following frying in both potato and tortilla chips." In other words, "[t]hese model product experiments indicate that typical frying and emulsification conditions do not substantially alter oil authenticity markers."

47. The magnitude of the deviations found in the Product cannot be explained by frying, by processing, or by natural variation. It is explained by the fact that the Product is not made with avocado oil.

**F. Defendant Knew Or Should Have Known The Avocado Oil Representation Was False**

48. Defendant knows, or reasonably should know, that its labeling of the Product is misleading consumers.

49. Adulteration of avocado oil has been publicly and repeatedly documented since at least 2020, when UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that the majority of the samples tested were adulterated or of substandard quality.[27] A follow-up study published in 2023 found that approximately 70% of private-label avocado oils tested were "rancid or mixed with other oils."[28]

[27] Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, https://www.sciencedirect.com/science/article/pii/S0956713520302449.

[28] Tiffany Dobbyn, *Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils,* https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils; Hilary S. Green & Selina C. Wang, *Purity and quality of private labelled avocado oil*, https://www.sciencedirect.com/science/article/pii/S0956713523002372.

50. Utz is a sophisticated, publicly traded food manufacturer. It sources, formulates, and markets the Product. Utz is aware or should be aware of industry studies and trends, and is aware or should be aware of the well-documented problem of adulteration in the avocado oil supply chain. Thus, Defendant knew or should have known that the Products do not contain avocado oil or are diluted with other cheaper oils.

## CLASS ALLEGATIONS

51. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually and on behalf of all members of the following classes (Nationwide Class and New York Subclass, collectively the "Classes"):

a. **Nationwide Class:** All natural persons who purchased the Product in the United States within the applicable statute of limitations period.

b. **New York Subclass:** All natural persons who purchased the Product in the State of New York within the applicable statute of limitations period.

52. Excluded from the Classes are the following individuals and/or entities: Utz and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Utz has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53. Pursuant to Fed. R. Civ. P. 23(c)(1)(C), each of the above class definitions is a placeholder that may be altered or amended at any time before final judgment. As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate before the Court determines whether class certification is appropriate.

54. **Numerosity**: the proposed Classes are so numerous that joinder of all members would be impractical. The Product is sold throughout the State of New York. The number of individuals who purchased the Product during the relevant time period is at least in the hundreds of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

55. **Common Questions Predominate**: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Utz misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Product;

b. Whether the oil used to make the Product is avocado oil;

c. Whether Utz's use of the challenged packaging, *i.e.*, the Avocado Oil Representation, constituted false or deceptive advertising;

d. Whether Utz engaged in unfair, unlawful and/or fraudulent business practices;

e. Whether Utz's unlawful conduct, as alleged herein, was intentional and knowing;

f. Whether the Product commanded a price premium as a result of the Avocado Oil Representation, and if so, in what amount;

g. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

h. Whether Plaintiff and the Classes are entitled to injunctive relief;

i. Whether Plaintiff and the Classes are entitled to statutory or punitive damages, and if so, in what amount; and

j. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

56. Utz has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact—namely, Utz's deceptive packaging and advertising of the Product. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of the Product: (a) bears the same material Avocado Oil Representation, and (b) the Product does not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

57. **Superiority**: Because of the relatively small [damages/individual stakes] at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

58. **Typicality**: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Utz's uniform unlawful conduct as alleged herein.

59. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed Classes, as his interests do not conflict with the interests of the members of the

proposed Classes he seeks to represent, and he has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

60. Utz has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Utz has acted on grounds generally applicable to the Classes, making final injunctive and declaratory relief appropriate with respect to the Classes as a whole.

**COUNT I**
**Violation of New York's General Business Law § 349**

61. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

62. This cause of action is brought pursuant to New York's Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiff Schultz and the Class, who purchased the Product within the applicable statute of limitations.

63. New York Gen. Bus. Law § 349, *et seq.* prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

64. Utz, in its advertising and packaging of the Product, made false, misleading, and deceptive representations and/or omissions about the oil used to make the Product, to mislead consumers into believing that the Product is made with avocado oil, when it is not.

65. Utz's labeling and advertising of the Product led to, and continues to lead to, reasonable consumers, including Plaintiff Schultz, believing that the Product is made with avocado oil.

66. Utz used the Avocado Oil Representation with the intent to sell the Product to consumers, including Plaintiff Schultz and the New York Class. The Avocado Oil

Representation is false, and Utz knew or should have known of its falsity. The Avocado Oil Representation is likely to deceive consumers into purchasing the Product because it is material to the average, ordinary, and reasonable consumer. Utz knew consumers would purchase the Product and/or pay more for it under the false—but reasonable—belief that the Product was made exclusively with avocado oil, when it is not. By placing the words "Avocado Oil" in the Product's own name, on the front of the package, Utz proves that information about the oil used to make the Product is material to consumers.

67. As a result of its deceptive acts and practices, Utz has sold thousands, of units of the Product to unsuspecting consumers across New York. If Utz had advertised the Product truthfully and in a non-misleading fashion, Plaintiff Schultz and Class members would not have purchased it or would not have paid as much as they did for it.

68. Utz's deceptive acts and practices are consumer-oriented and have a broad impact on consumers at large. The Product is sold at retail throughout the State of New York—including at Costco Wholesale warehouses, where Plaintiff Schultz purchased it—and the Avocado Oil Representation appears uniformly on the packaging of every unit of the Product sold in New York.

69. Plaintiff Schultz and the Class reasonably and detrimentally relied on the material and false Avocado Oil Representation in that they purchased the Product.

70. Plaintiff Schultz has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Utz's deceptive acts and practices. Specifically, Plaintiff Schultz purchased the Product for his own personal use. In doing so, Plaintiff Schultz relied upon Utz's false, misleading, and deceptive representations that the Product was made exclusively with avocado oil, when it was not. Plaintiff Schultz spent money

on the transaction that he otherwise would not have spent had he known the truth about Utz's advertising claims.

71. Plaintiff Schultz and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Utz's deceptive advertising—namely, Plaintiff Schultz and the Class lost the price premium associated with the Product they bought from Utz.

72. As a direct and proximate result of Utz's false, misleading, and deceptive representations and/or omissions, Plaintiff Schultz and members of the Class were harmed in that they: (1) paid money for a Product that was not what Utz represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Utz advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than if the Avocado Oil Representation were truthful. Accordingly, Plaintiff Schultz seeks to recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees, together with injunctive relief pursuant to N.Y. Gen. Bus. Law § 349(h).

**COUNT II**
**Violation of New York's General Business Law § 350**

73. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

74. Plaintiff Schultz brings this claim individually and on behalf of the Class, who purchased the Product within the applicable statute of limitations.

75. The New York False Advertising Law, codified at Gen. Bus. Law § 350, *et seq.*, prohibits advertising, including labeling, that "is misleading in a material respect."

76. Utz violated § 350 when it advertised and marketed the Product through the unfair, deceptive, untrue, and misleading Avocado Oil Representation disseminated to the public through the Product's labeling, packaging, and advertising. These representations were false

because the Product does not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Product.

77. In making and disseminating the representations alleged herein, Utz knew or should have known that the representations were untrue or misleading.

78. Utz's Avocado Oil Representation was specifically designed to induce reasonable consumers, like Plaintiff Schultz and the Class, to purchase the Product.

79. Plaintiff Schultz has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Utz's deceptive acts and practices. Specifically, Plaintiff Schultz purchased the Product for his own personal use. In doing so, Plaintiff Schultz relied upon Utz's false, misleading, and deceptive representations that the Product was made exclusively with avocado oil, when it was not. Plaintiff Schultz spent money on the transaction that he otherwise would not have spent had he known the truth about Utz's advertising claims.

80. As a direct and proximate result of Utz's misconduct, Plaintiff Schultz and members of the Class were harmed in that they: (1) paid money for a Product that was not what Utz represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Utz advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than if Utz's Avocado Oil Representation were truthful. Accordingly, on behalf of himself and members of the New York Class, Plaintiff Schultz seeks to recover his actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees, together with injunctive relief pursuant to N.Y. Gen. Bus. Law § 350-e(3).

**COUNT III**
**Intentional Misrepresentation**

81. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

82. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Utz.

83. Utz marketed the Product in a manner indicating that it is made exclusively with avocado oil when it is not. Therefore, Utz has made misrepresentations about the Product on the Product's packaging.

84. The Avocado Oil Representation is material to a reasonable consumer because it relates to the quality and healthfulness of the Product. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to the Product.

85. At all relevant times, Utz knew that the Avocado Oil Representation was misleading. Utz intends for Plaintiff and other consumers to rely on the Avocado Oil Representation, as evidenced by Utz intentionally and conspicuously placing it on the packaging of the Product, and by building the Boulder Canyon brand's advertising around it. In the alternative, Utz acted recklessly in making the Avocado Oil Representation without regard to the truth.

86. Plaintiff and members of the Classes have reasonably and justifiably relied on Utz's intentional misrepresentations (*i.e.*, the Avocado Oil Representation) when purchasing the Product, and had the correct facts been known, would not have purchased it at the price at which it was sold in the market, or would not have purchased it at all.

87. Therefore, as a direct and proximate result of Utz's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and

specific damages, including but not limited to the amounts paid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT IV**
**Breach of Express Warranty**
**Uniform Commercial Code 2-313**

88. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

89. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Utz.

90. Utz, as the manufacturer, marketer, distributor, and/or seller of the Class Product, has expressly warranted on the Class Product's packaging that the Class Product is made with avocado oil, through the Avocado Oil Representation.

91. This representation about the Class Product is: (a) an affirmation of fact or promise made by Utz to consumers that the Class Product is made with avocado oil; (b) became part of the basis of the bargain to purchase the Class Product when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Product would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Product is a description of goods which was made as part of the basis of the bargain to purchase the Class Product, and which created an express warranty that the Class Product would conform to the Class Product's description.

92. Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing that the Class Product did in fact conform to that warranty.

93. Utz has breached the express warranty made to Plaintiff and the Classes by failing to produce the Product in accordance with the Avocado Oil Representation, as expressly

warranted on the packaging. The Product does not conform to the Avocado Oil Representation because it is not made with avocado oil and/or not exclusively made with avocado oil.

94. Plaintiff and members of the Classes paid a premium price for the Product but did not obtain the full value of the Product as represented. As a direct and proximate result of Utz's breach, Plaintiff and members of the Classes were injured because they: (1) paid money for a Product that was not what Utz represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Utz advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than Utz represented. Had Utz not breached the express warranty by making the false representation alleged herein, Plaintiff and members of the Classes would not have purchased the Product or would not have paid as much as they did for it.

**COUNT V**
**Breach of Implied Warranty**
**Uniform Commercial Code 2-314**

95. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

96. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Utz.

97. Utz is a merchant with respect to the sale of the Product. Therefore, a warranty of merchantability is implied in every contract for the sale of the Product.

98. By advertising the Product with its current packaging, Utz made an implied promise that the Product is made with avocado oil and/or is made exclusively with avocado oil. The Product does not, however, "conform to the promises . . . made on the container or label" because it is not made with avocado oil and/or not made exclusively with avocado oil. Plaintiff,

as well as other consumers, did not receive the goods as impliedly warranted by Utz to be merchantable.

99. Therefore, the Product is not merchantable under the U.C.C. and Utz has breached its implied warranty of merchantability with respect to the Product.

100. If Plaintiff and members of the Classes had known that the Product was not made with avocado oil, they would not have been willing to pay the premium price associated with it, or would not have purchased it at all. Therefore, as a direct and/or indirect result of Utz's breach, Plaintiff and members of the Classes have suffered injury.

**COUNT VI**
**Unjust Enrichment**

101. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

102. Plaintiff brings this claim on behalf of the Nationwide Class and New York Subclass.

103. To the extent required by the law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8(d)(2).

104. As alleged in detail above, Utz's false and misleading representations caused Plaintiff and the Class to pay a price premium for the Class Product.

105. In this way, Utz received a direct and unjust benefit at the expense of Plaintiff and the Class.

106. Plaintiff and the Class seek the equitable return of this unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for the following relief:

a) Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

b) A declaration that Utz's actions, as described herein, violate the laws described herein;

c) A finding in favor of Plaintiff and the Class against Utz on all counts asserted herein;

d) An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Utz obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair, and fraudulent business practices described herein;

e) An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class members, including, *inter alia*, an order prohibiting Utz from making the Avocado Oil Representation on the Product unless and until the Product is in fact made with avocado oil conforming to the applicable compositional criteria;

f) An award of all economic, monetary, actual, consequential, and compensatory damages caused by Utz's conduct;

g) An award of statutory damages and treble damages pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3);

h) An award of punitive damages, statutory damages, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

i) An award of nominal damages;

j) An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

k) An award to Plaintiff and the proposed Class of pre- and post-judgment interest, to the extent allowable; and

l) Such further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Class, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: August 13, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Neal J. Deckant_*
Neal J. Deckant

Neal J. Deckant
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiff*