Davis Wright Tremaine LLP

42nd Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Daniel Imakyure**
212.489.8230 tel

danielimakyure@dwt.com

October 8, 2026

**VIA CM/ECF**
Honorable Hector Gonzalez
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Brooklyn, NY 11201

Re: **Request for Pre-Motion Conference, *Schultz v. Utz Brands, Inc.*, No. 1:26-cv-4969-HG**

Dear Judge Gonzalez:

Defendant Utz Brands, Inc. (Utz) respectfully submits this letter pursuant to the Court's Individual Rules regarding its proposed motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## A. Background

Utz takes pride in making the best quality products with high-quality ingredients, including its Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips (the Chips), whose three-ingredient label accurately reads "Potatoes, Avocado Oil, Sea Salt." Plaintiff alleges the "avocado oil" claim on the label is false based on a July 2026 University of California, Davis report (the Report). The Report does not indicate the Product contains any oil other than avocado oil, and it does not identify any adulterant. The Report states that the Chips' fatty acid and sterol profiles are "inconsistent" with compositional ranges set by the Codex Alimentarius, a non-binding international reference standard (the "Codex Standard"). The Report does not identify the presence of any other oil or adulterant in the Chips. Furthermore, the Codex Standard does not account for variation in avocado oils and thereby renders false negatives. Plaintiff's counsel admits that the Report is the only basis for this action and that no independent testing exists to support this Action. Because the Report cannot support Plaintiff's theory, the Complaint should be dismissed for lack of Article III standing. Alternatively, Plaintiff's claims are preempted, and each of Plaintiff's six causes of action fails as a matter of law.

## B. Plaintiff Lacks Standing Because He Cannot Alleged He Purchased Chips Made With "Other, Cheaper Oils" Instead of Avocado Oil.

Plaintiff does not allege, as he must for Article III standing, that he suffered an injury-in-fact. An injury is "merely hypothetical and conjectural," and therefore insufficient, where a plaintiff relies on third-party reports of generalized wrongdoing without pleading specific facts showing that he was affected. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146, 148–49 (2d Cir. 2011). To establish standing, Plaintiff must therefore "plausibly allege" that "he [him]self purchased" Chips that contained "other cheaper oils" instead of avocado oil. *Kell v. Lily's Sweets, LLC*, 2024 WL 1116651, at *3 (S.D.N.Y. Mar. 13, 2024); Compl. ¶ 25. His theory is that chips made with other oils are worth less than those made solely with avocado oil. But "unless [he] has a basis to

allege" *his* Chips contained other oils, "he has no basis to allege that he overpaid" and therefore no Article III injury. *Id*. Plaintiff admits he did not test the Chips he purchased and relies solely on the Report to allege that all Chips contained other oils. Plaintiff cannot meet his "burden of explaining why [the] third party's analysis can be reasonably extrapolated to [his] individual purchase," as required by *Amidax*. *Kell*, 2024 WL 1116651 at *5.

***First,*** the Report's limited testing cannot plausibly show that the Chips are routinely mislabeled, much less that Plaintiff's chips were. The Report examined only two production lots of the Chips purchased online and in California stores. Compl. ¶ 37; Report at 2. The Report's authors acknowledge its "results reflect only the two specific lots analyzed and are not intended to represent ongoing manufacturing practices or lot-to-lot variability," and that it "may not fully represent national market variability." Report at 8. Courts in this Circuit routinely reject this kind of extrapolation. *See Kell*, 2024 WL 1116651, at *4 (testing "just two or three samples" insufficient to "extrapolate those findings to every [product] ever sold, or to the specific Products purchased by [plaintiff]"); *Esquibel v. Colgate-Palmolive Co.*, 2025 WL 1785865, at *4 (S.D.N.Y. June 27, 2025) (allegations insufficient where only four samples were tested); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to [be defective], the bottle that [plaintiff] purchased must as well.").

***Second***, nothing ties the two tested lots to Plaintiff's purchases, so he cannot plausibly allege his Chips were mislabeled. Plaintiff purchased his Chips in Brooklyn, not California. *Compare* Compl. ¶ 12, *with id.* ¶ 37; Report at 2. He does not allege his purchases came from the same source, distribution channel, or geographic market as the Report's samples. In *Kell*, the Court dismissed even though the tested samples came from "online and stores in the New York area," the same general market as plaintiff's purchases. 2024 WL 1116651, at *4. The disconnect here is far greater. It is not reasonable to infer that two lots bought in California or online at a single point in time reveal what was in the Chips he bought in New York at some other time. *See Esquibel*, 2025 WL 1785865, at *4 (no standing where plaintiffs' purchases were "geographically disparate" from the tested samples); *Pellegrino v. Procter & Gamble Co.*, 2026 WL 880573, at *11 (S.D.N.Y. Mar. 31, 2026) (same where plaintiffs did not allege where samples were obtained); *Brower v. Colgate-Palmolive Co.*, 2026 WL 1831253, at *7 (S.D.N.Y. June 25, 2026) (same).

***Third***, Plaintiff's vague purchase allegations cannot bridge that gap. He does not allege that he purchased the Chips regularly enough to make a price premium injury plausible. Where a plaintiff's purchases "could have all been made" at a time remote from the testing, "[t]he likelihood that [he] purchased a contaminated product is … significantly less than in cases where the plaintiffs purchased products on a weekly or regular basis." *Kolker v. Badia Spices, Inc.*, 2026 WL 2905362, at *6–7 (E.D.N.Y. Sept. 28, 2026). Plaintiff alleges only that he bought the Chips "on various occasions" and "frequently," but only identifies a single dated purchase. Compl. ¶ 12. These allegations are too speculative to infer that any of his purchases came from the two lots the Report tested. *See Kolker*, 2026 WL 2905362, at *7; *see also Onaka v. Shiseido Ams. Corp.*, 2024 WL 1177976, at *4 (S.D.N.Y. Mar. 19, 2024) (no standing where plaintiffs "made no allegations regarding the frequency of their purchases").

### C. Even Assuming Standing, Plaintiff's Claims are Preempted.

Plaintiff's claims are expressly preempted to the extent they seek to impose a compositional or labeling requirement inconsistent with federal standards. Federal law regulates the declaration of

oils in ingredient statements. *See* 21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4(a)(1), (b)(14). But the Report and the Complaint measure so-called authenticity against non-binding international Codex reference points—not federal standards. Compl. ¶¶ 4, 38. Plaintiff's theory treats the Report's chemical-profile criteria employed as the legally controlling standard for what may be called avocado oil. Such requirements not identical to federal law are expressly preempted by 21 U.S.C. § 343-1(a). *See Jackson-Mau v. Walgreen Co.*, 115 F.4th 121, 128, 132 (2d Cir. 2024) (requirement is "not identical" where it imposes obligations concerning the composition or labeling of food that are not imposed by, or differ from, federal law); 21 C.F.R. § 100.1(c)(4).

**D. Each of Plaintiff's Claims Independently Fails.**

Plaintiff's claims under New York's General Business Law (GBL) and for misrepresentation, breach of express and implied warranty, and unjust enrichment all fail under Rule 12(b)(6). The GBL claims require conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Courts have dismissed materially identical avocado-oil claims where the plaintiff did not explain how third-party testing made the label false or misleading. *See McConnon v. Kroger Co.*, 2024 WL 3941340, at *3 (C.D. Cal. June 21, 2024) (dismissing complaint based on U.C. Davis report that failed to explain how those results rendered the label false); *Hawkins v. Walmart, Inc.*, 766 F. Supp. 3d 1036, 1043–44 (E.D. Cal. 2025). Likewise here, the Complaint does not allege what specific adulterant the Chips supposedly contains, in what quantity, or how the Report's compositional data demonstrates that the "Avocado Oil" label is false. At most, the Report is "merely consistent with" a theory of adulteration but "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's conclusory price-premium allegation also fails to plead a measurable economic loss caused by the alleged deception, required for actual injury under the GBL. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56 (1999).

The misrepresentation claim fails under Rule 9(b), which requires "facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiff alleges only that Utz "knew or should have known," because adulteration has been "publicly and repeatedly documented since at least 2020." Compl. ¶¶ 48–50. But the studies he cites tested bottled avocado oils, not Utz products, *id.* ¶ 49, and industry-wide reports cannot support a strong inference that Utz knew its Chips were mislabeled, or acted recklessly, *id.* ¶ 85.

The remaining claims fare no better. The express warranty claim fails because the label accurately states the Chips are made with avocado oil. *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *7 (E.D.N.Y. Feb. 13, 2020); *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021). Both the express and implied warranty claims fail for lack of privity because Plaintiff bought from Costco and SuperFresh and alleges no direct contractual relationship with Utz. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023). His implied warranty claim also fails because he does not allege the Chips were unfit for eating. *See Sarr*, 2020 WL 729883, at *7–8. His unjust enrichment claim "merely duplicates" the others but fails to meet Rule 9(b)'s particularity requirement. *Id.* at *10; *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021).

Utz respectfully requests a pre-motion conference to discuss its proposed motion to dismiss the Complaint in its entirety.

Sincerely,

Davis Wright Tremaine LLP

/s/ *Daniel Imakyure*

Daniel Imakyure
*New York Counsel for Utz Brands, Inc.*

DAVIS WRIGHT TREMAINE LLP
Daniel Imakyure
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Email: danielimakyure@dwt.com

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Marcy Blattner Micale
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-6800
Email: jacobharper@dwt.com
marcymicale@dwt.com

*Counsel for Defendant Utz Brands, Inc.*